# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SASHA T. GULLEY,

        Plaintiff,

   v.             Case No. 17-CV-1782

NANCY A. BERRYHILL,

        Defendant.

## DECISION AND ORDER

**1. Facts and Procedural History**

Sasha Gulley alleges she became disabled on January 16, 2012, when she slipped and fell on ice, exacerbating her prior back problems. She seeks disability insurance and supplemental security income benefits due to low back and neck pain, as well as fibromyalgia.

The ALJ found Gulley suffers from degenerative disc disease of the lumbar and cervical spine, fibromyalgia, and obesity. (Tr. 17.) She has not engaged in substantial gainful activity since her alleged onset date. (Tr. 17.) Her impairments do not meet or medically equal a listing. (Tr. 18-19.) Rather, she had the residual functional capacity to perform sedentary work with additional limitations, including only occasional lifting,

pushing, or pulling of up to ten pounds, sitting for up to six hours of an eight-hour workday, standing or walking for up to two hours of a workday. (Tr. 19.)

These limitations precluded her past relevant work but, relying on the testimony of a vocational expert, the ALJ concluded Gulley could work as a "Document Preparer Dictionary of Occupational Titles (DOT) Code#: 249.587-018 / Sedentary /Unskilled/ SVP 2 / 98,000 jobs nationally; Assembler— DOT Code#: 713.687-018 / Sedentary /Unskilled/ SVP 2 / 7,300 jobs nationally; and Check Weigher — DOT Code#: 737.687-026 / Sedentary/ Unskilled/ SVP 2 I 13,000 jobs nationally." (Tr. 27.)

## 2. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

It is not the court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Moore*, 743 F.3d at 1121. Rather, the court must determine whether the ALJ complied with his obligation to build an "accurate and logical bridge" between the

evidence and his conclusion that is sufficient to enable a court to review the administrative findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). If the ALJ committed a material error of law, the court cannot affirm his decision regardless of whether it is supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

3. **Analysis**

   **3.1. Opinion Evidence**

Gulley challenges the ALJ's assessment of the opinions of Jim Donaldson, an athletic trainer who assessed Gulley as part of her worker's compensation claim, and Dr. Arvind Ahuja, a neurologist who treated Gulley.

The ALJ discussed certain of Dr. Ahuja's opinions (Tr. 331, 333, 343, 349, 357-58) and discounted each because "it is not expressed in precise functional terms supported with citation to medical evidence, and as such, its probative value is limited. Further, this opinion is conclusory, poorly explained, and consists only of circled items on a checklist." (Tr. 25.) The ALJ also noted that these opinions intrude on issues reserved to the Commissioner. (Tr. 25.) With respect to a November 6, 2012 opinion (Tr. 357-58), the ALJ noted, "generally speaking, some physical examinations of record revealed such little symptomatology, that outright inability to perform most postural activities is not warranted." (Tr. 25.)

3

Although Gulley challenges the ALJ's assessment on various fronts, the court finds it sufficient to note the ALJ's selective reliance on the record. The ALJ failed to discuss any of Dr. Ahuja's opinions in which he stated Gulley was limited to working only four hours per day. (Tr. 348, Nov. 1, 2012; Tr. 371, March 21, 2013; Tr. 368, Oct. 10, 2013; Tr. 424, Feb. 13, 2014; Tr. 423, May 23, 2014.) Beginning in March of 2013, Dr. Ahuja characterized this limitation as permanent.

This opinion was consistent with Donaldson's opinion, which the ALJ discounted in large part because it was "not supported by the bulk of the medical record." (Tr. 24.) Like Dr. Ahuja, Donaldson opined that Gulley could work only three to four hours a day. (Tr. 360.) However, Dr. Ahuja's un-referenced opinions were consistent with Donaldson's opinions. And, specifically with respect to sitting, Dr. Ahuja opined Gulley was limited to "occasional" sitting. (Tr. 348, 423.) Thus, the court concludes that the ALJ's error with respect to Dr. Ahuja's opinions also undermined the ALJ's assessment of Donaldson's opinions.

The ALJ gave a couple of other reasons for discounting these opinions, neither of which is sufficient to sustain his conclusions. First, he discounted Donaldson's opinion on the ground that he was not an acceptable medical source. As is relevant here, that meant only that his opinion was not entitled to controlling weight. The ALJ was still obligated to assess Donaldson's opinion in light of the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *See* SSR 06-3p. Significantly, as a Certified Workers

4

Compensation Healthcare Provider, Donaldson was a specialist in assessing persons' ability to work. *Cf.* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

The ALJ also discounted Donaldson's and Dr. Ahuja's opinions because they were not stated "in precise functional terms." (Tr. 24, 25.) It is unclear what the ALJ meant by this statement. The Commissioner contends that the ALJ was noting that the opinions "offered ranges rather than discrete precise values for several findings." (ECF No. 31 at 6.) The court fails to understand how the use of ranges in these opinions was material, much less a basis for discounting the opinions. If a medical source opined that a patient could sit two hours per day, the court would not find the opinion entitled to any greater weight than if the medical source had opined the patient could sit for between one and three hours per day. That is unlike an opinion that someone could work between five and ten hours per day, whereby someone in the lower end of the range would be disabled and someone at the higher end of the range not so. Opinions of a claimant's residual functional capacity are inherently imprecise and lend themselves to being expressed as ranges. Even if expressed in precise terms, the court generally would understand the opinion as being an approximation.

However, the court rejects Gulley's argument that the ALJ was required to give Dr. Ahuja's opinion controlling weight. Given the facts of this case, the ALJ could reasonably find that Dr. Ahuja's opinion was "inconsistent with the other substantial evidence." *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (quoting 20 C.F.R.

§ 404.1527(c)(2); citing *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010)). As the ALJ observed with respect to Dr. Ahuja's November 6, 2012 opinion (Tr. 357-58), the physical examinations were not necessarily consistent with the limitations identified by Dr. Ahuja. (Tr. 25.) What weight these opinions are entitled to is a question that must be reassessed on remand in accord with 20 C.F.R. §§ 404.1527(c) and 416.927(c).

### 3.2. Symptom Severity

The ALJ offered three reasons for concluding that Gulley's symptoms were not as debilitating as she reported. First, her activities of daily living are "generally inconsistent with disability." (Tr. 20.) "On her function reports, the claimant indicated that she prepares her own meals a couple of times per week, does light laundry when possible, leaves her home twice per week, uses public transportation, drives a car, goes out alone, shops in stores for food and household items, handles money without difficulty, indulges hobbies such as reading, watching TV, and listening to music, and spends time with others." (Tr. 20.) Second, her "drug-seeking behavior… suggests that the claimant's use of strong narcotic medications may be overstated relative to her actual pain level." (Tr. 21 (citation omitted).) Third, the objective imaging of her spine and neck do not indicate a "substantial underlying abnormality." (Tr. 21.) Although some examinations revealed functional limitations, "many of the claimant's examinations ran contrary, evidencing little problem of gait, full strength of the

6

extremities, and even little-to-no pain on cervical and lumbar range of motion (ROM)." (Tr. 21.) The ALJ found this inconsistent with Gulley's report that "she must lie down all day, and further contradict her endorsement of limitations of most basic physical work activities." (Tr. 21.)

Gulley argues that the ALJ erred in assessing the severity of her symptoms because he "erroneously found that innocuous and insignificant daily activities were contrary to a finding of disabled (sic)" and "also fail[ed] to properly address Ms. Gulley's medications and side-effects, headache symptoms, and required use of a scooter." (ECF No. 24 at 20.)

An ALJ is expected to consider a claimant's activities of daily living in assessing the severity of her symptoms. SSR 16-3p, § 2. d. Thus, if a claimant engages in activities that appear inconsistent with her reported limitations, the ALJ may rely on the activities as a factor in concluding that her symptoms are not as severe as she reports. However, it is inappropriate for an ALJ to equate a person's daily activities with an ability to work fulltime without some explanation as to why the activities suggest an ability to work fulltime. For example, simply because a person reports doing her own dishes does not mean she could work fulltime as a dishwasher. "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons …,

and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

The ALJ committed the error repeatedly condemned by the Court of Appeals for the Seventh Circuit when he stated not merely that Gulley's activities were inconsistent with the alleged severity of her symptoms but that her "activities of daily living [were] generally inconsistent with disability." (Tr. 20.) The fact that Gulley reported "she prepares her own meals a couple of times per week, does light laundry when possible, leaves her home twice per week, uses public transportation, drives a car, goes out alone, shops in stores for food and household items, handles money without difficulty, indulges hobbies such as reading, watching TV, and listening to music, and spends time with others" (Tr. 20) is not necessarily inconsistent with a claim of disability. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). In fact, the court does not see how these reported abilities are even inconsistent with Gulley's reported limitations. Moreover, the ALJ relied on reports dated December 19, 2013 (Tr. 246-54) and July 24, 2014 (Tr. 264-72) but failed to discuss Gulley's testimony at the September 7, 2016 hearing, at which she offered more detail that suggested her abilities may have deteriorated (Tr. 47-50).

The other reasons the ALJ offered to support discounting the severity of Gulley's symptoms are insufficient to independently sustain his conclusion. Therefore, remand is required on this basis as well.

8

### 3.3. Vocational Expert

Finally, Gulley highlights an issue that has been simmering with respect to social security claims for some time – the "obsolete" Dictionary of Occupational Titles (DOT). *See Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018) (quoting *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014). The DOT is no longer published, was last updated in 1991, and much of the information it contains describes jobs as they existed in 1977. *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). "No doubt many of the jobs have changed and some have disappeared." *Id.*; *see also Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018). Moreover, the data concerning the number of jobs in any particular category are unreliable. *Forsythe v. Colvin*, 813 F.3d 677, 680-81 (7th Cir. 2016).

The ALJ identified the following as jobs Gulley was capable of performing given her residual functional capacity:

- Document Preparer Dictionary of Occupational Titles (DOT) Code#: 249.587-018 / Sedentary / Unskilled / SVP 2 / 98,000 jobs nationally;
- Assembler — DOT Code#: 713.687-018 / Sedentary / Unskilled / SVP 2 / 7,300 jobs nationally; and
- Check Weigher — DOT Code#: 737.687-026 / Sedentary/ Unskilled / SVP 2 I 13,000 jobs nationally.

(Tr. 27.)

Despite the seemingly broad scope suggested by their titles, these titles refer to very specific positions. The first refers to a person who

> [p]repares documents such as brochures, pamphlets, and catalogs, for microfilming, using paper cutting, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of

> standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

*Titus v. Callahan*, 133 F.3d 561, 563 n.4 (8th Cir. 1997) (quoting Dictionary of Occupational Titles (DOT) (4th ed. vol. I at 219, 1991)).

Although microfilming might not be completely obsolete, it seems fair to suspect it has changed dramatically since 1977 or even 1991 "given the shift to digital storage and advances in scanning technology." *Dearth v. Berryhill*, No. 2:16-CV-487-JEM, 2018 U.S. Dist. LEXIS 38847, at *11 (N.D. Ind. Mar. 9, 2018). At a minimum, the notion that nearly 100,000 such jobs exist nationally strains credulity.

Similarly, the court doubts whether it is reasonable to conclude that there are 13,000 people performing the job of "check weigher (ordnance)" in the country today. This position refers to the specific job of weighing "ordnance," such as artillery shells, a second time to confirm that another worker added the proper amount of powder. DOT 737.687-026. Moreover, intuition suggests this position may well have been automated in the decades since the DOT was last updated. For both of these reasons, it is doubtful that 13,000 people in the country hold this job today.

"If the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy …, the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs." *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014). Because the DOT is so extremely outdated, the court finds that an ALJ errors if he uncritically accepts the job numbers proffered by the vocational expert without attempting to determine whether the numbers are still current when common sense suggests that they may not be. *See, e.g., Dimmett v. Colvin*, 816 F.3d 486, 489 (7th Cir. 2016) (criticizing the ALJ for "uncritically accepting the vocational expert's testimony"). Although an ALJ is often entitled to rely on the expertise of a vocational expert, *see* SSR 00-4p, in extreme cases such as this, where the vocational expert's opinions as to the availability of particular jobs are so obviously inconsistent with common sense, it will be error for the ALJ to accept them without, at a minimum, inquiring further as to the basis for the vocational expert's conclusion.

Finally, the job the vocational expert identified as "assembler" refers to a final assembler of optical goods, which is described as a person who "[a]ttaches nose pads and temple pieces to optical frames, using handtools: Positions parts in fixture to align screw holes. Inserts and tightens screws, using screwdriver." DOT 713.687-018. Obviously, eyeglasses have not suffered the sort of decline as, for example, microfilm. And presumably there are people in the country who assemble those glasses, perhaps as many as 7,300 as stated by the vocational expert. But whether this is a "significant

number of jobs," *see* 20 C.F.R. §§ 404.1566(b), 416.966(b), is a question that will have to be assessed in the first instance on remand.

4. **Conclusion**

The court finds that the ALJ's errors discussed above necessitate remand for rehearing. However, the court finds the record fails to support a direct award of benefits. *See Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011).

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to § 405(g), sentence four, this matter is **remanded** for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of February, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge